NATIONAL AMUSEMENT COMPANY, Respondent, v. DEPARTMENT OF REVENUE, Appellant.

*No. 66. Argued November 27, 1968.—Decided January 7, 1969.*
(Also reported in 163 N. W. 2d 625.)

For the appellant the cause was argued by *Allan P. Hubbard,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the respondent there was a brief and oral argument by *Maurice B. Pasch* of Madison.

HANLEY, J.   The sole issue on this appeal is whether the sale of popcorn and soft drinks prepared and sold at motion picture theater refreshment stands is subject to sales taxation under sec. 77.52 (1) (a) 7, Stats.

*Weight to Accord Trial Court's Decision.*

The first thing to determine is the weight to be given the trial court's decision in this matter. When the facts have been stipulated, the remaining issue or issues constitute questions of law. In considering such questions, this court does not give any special weight to the conclusions of the trial court.

"Most of the facts were stipulated, there being few, if any, in dispute, and those not in sharp conflict. Here we have the trial court applying the law to the facts or the facts to the law, as it sees it. In such cases this court is not bound by the findings of the trial court, and the rule that the findings must be sustained unless against the great weight and clear preponderance of the evidence is not applicable." *Dairy Queen of Wisconsin, Inc. v. McDowell* (1952), 260 Wis. 471, 474, 51 N. W. 2d 34, 52 N. W. 2d 791. *See also: In re Adams Machinery, Inc.* (1963), 20 Wis. 2d 607, 123 N. W. 2d 558, and *Engineers & Scientists v. Milwaukee* (1968), 38 Wis. 2d 550, 554, 157 N. W. 2d 572.

Thus this court should decide the question presented here according to its own previously established rules of statutory construction.

*Applicable Rules of Construction.*

There are some rules of construction which are fundamental to this case. First, when statutory language is clear and unambiguous,

". . . no judicial rule of construction is permitted, and the court must arrive at the intention of the legislature by giving the language its ordinary and accepted meaning." *West Allis v. Rainey* (1967), 36 Wis. 2d 489, 495, 153 N. W. 2d 514; and *State v. Resler* (1952), 262 Wis. 285, 55 N. W. 2d 35.

It would appear that the following rule is also applicable to this case:

". . . a tax cannot be imposed without clear and express language for that purpose, and where ambiguity and doubt exist, it must be resolved in favor of the person upon whom it is sought to impose the tax." *Plymouth v. Elsner* (1965), 28 Wis. 2d 102, 106, 135 N. W. 2d 799; and *Wadhams Oil Co. v. State* (1933), 210 Wis. 448, 459, 245 N. W. 646, 246 N. W. 687.

Considering these two basic rules of construction, it would appear that a party objecting to the tax assessment can escape its imposition by pointing to any ambiguity and doubt in the statute creating the tax. The ultimate result in this case therefore depends upon whether the statute is ambiguous and doubtful. This appears to be the position taken by this court in the only other selective sales tax case decided to date.

". . . While it is to be conceded that if there is any ambiguity in a taxing statute, any doubt shall be resolved in favor of the taxpayer, . . . a court is not to search for doubt in an endeavor to defeat an obvious legislative intention." *Telemark Co. v. Department of Taxation* (1965), 28 Wis. 2d 637, 640, 137 N. W. 2d 407.

### Test of Ambiguity.

This court has consistently used the same test for ambiguity:

"A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses." *State ex rel. Neelen v. Lucas* (1964), 24 Wis. 2d 262, 267, 128 N. W. 2d 425, citing *State ex rel. West Allis v. Dieringer* (1957), 275 Wis. 208, 218, 81 N. W. 2d 533.

Whenever a case such as this one is before the court, however, it is obvious that people disagree as to the meaning to be given to a statute. This alone cannot be controlling. The court should look to the language of the statute itself to determine if "well-informed persons" *should have* become confused.

". . . In construing or 'interpreting' a statute the court is not at liberty to disregard the plain, clear words of the statute." *State v. Pratt* (1967), 36 Wis. 2d 312, 317, 153 N. W. 2d 18.

Now it is necessary to look to the statute itself:

"77.52 **Imposition of selective retail sales tax.** (1) For the privilege of selling, leasing or renting the tangible personal property herein described at retail a tax is hereby imposed upon all retailers at the rate of 3 per cent of the gross receipts from the sale, lease or rental of such tangible personal property sold, leased or rented at retail in this state on or after February 1, 1962.

"(a) The tax imposed herein applies to the sale, lease or rental of the following:

". . .

"7. Meals, food, food products and beverages for human consumption sold by restaurants, hotels, cafes, bars, caterers, lunch counters, wagons, and other establishments engaged in the business of preparing food or beverages and selling for direct consumption on or off the premises, . . . [followed by exceptions which are not pertinent to this case]."

Giving the words of the statute their ordinary meaning, the statute appears to be plain and unambiguous. We read the statute to say:

The *entire* gross receipts resulting from the sale of meals, food, food products, or beverages are subject to the selective sales tax from the following establishments:

1. Restaurants, hotels, cafes, bars, caterers, lunch counters, wagons, and

2. Any other establishment which meets the following test:

(a) Is engaged in the business of preparing food or beverages, and

(b) Sells for direct consumption on or off the premises.

The placing of a comma after "wagons" in sec. 77.52 (1) (a) 7, Stats., indicates that the clause

". . . engaged in the business of preparing food or beverages and selling for direct consumption on or off the premises . . ."

modifies *only* "other establishments." This seems to be the only logical interpretation of the statutory language. This, however, is not the test which has been applied by the department. We do not believe respondent would argue with this overall interpretation of the statute. Respondent claims to be outside the application of the statute because of his interpretation of some of the words in the statute.

### *Respondent's Interpretation.*

Respondent contends:

1. That popcorn and soft drinks are not meals, food, food products or beverages;

2. That the theater is not engaged in the *business* of preparing food or beverages;

3. That a theater does not *prepare* food or beverages; and

4. That a theater is not a restaurant, hotel, cafe, bar, caterer, lunch counter, wagon, or other *similar* establishment.

Each argument will be considered separately.

1. It is respondent's position that popcorn and soft drinks are confections and that confections are not taxable under the selective sales tax. Webster's Third New International Dictionary, Unabridged, 1967 (hereinafter referred to only as "Webster's"), contains the following definition of "confection":

"1. Mixture: a preparation esp. for human consumption made by mixing diverse ingredients: . . . a preparation of fruits, nuts, roots, or other morsels with sugar . . . ."

That same source defines "food" as:

"1a: material consisting of carbohydrates, fats, proteins, and supplementary substances (as minerals, vitamins) that is taken or absorbed into the body of an organism in order to sustain growth, repair, and all vital processes and to furnish energy for all activity of the organism . . . ."

Even if popcorn qualified as a confection, and it does not appear that it should, confections are still "food," and they would certainly be considered so by most "reasonably well-informed persons."

Webster's also defines "beverage":

"1. Liquid for drinking: *esp.* such liquid other than water (as tea, milk, fruit juice, beer) usu. prepared (as by flavoring, heating, admixing) before being consumed . . . ."

There can be no doubt that the ordinary meaning given to the word "beverage" includes such items as "soft drinks."

2. Respondent contends that a theater is engaged in the business of entertaining and not in the business of preparing food or beverages. It is conceded that a theater is primarily in the entertainment business, but the statute does not say *"primarily* engaged in the business;" it merely says "engaged in the business."

The legislature intended the phrase "engaged in the business of preparing food or beverages" to have a broad meaning. If theaters were not within the meaning of the phrase, it would logically follow that food and beverages prepared and sold in department stores, drugstores, bowling alleys, bus terminals, on trains and in planes, in conjunction with these other business activities, also would escape taxation. Any business only incidentally engaged in the business of preparing food or beverages, but primarily engaged in another business activity, would be able to prepare and sell meals, food, food products and

beverages without any sales tax liability. Under such a theory, theaters could prepare and sell full course meals without any sales tax liability.

Respondent further contends that refreshments are provided to theater patrons merely as a convenience or as a service. However, the record is replete with evidence that the refreshment stands are high-profit endeavors. It is difficult to believe that refreshment stands would still be operated if they did not contribute to the income of the theater. We hold that selling of popcorn and beverages at a theater constitutes "business" as that word is ordinarily used by "reasonably well-informed persons."

3. Respondent next contends that it does not "prepare" food or beverages. The trial judge stated:

"I don't think the legislature intended that the least 'preparation' of an item suddenly changed the character of the vendor. If this is what the statute means, then it should simply state that anyone who prepares and sells food products for direct human consumption on or off the premises must pay or collect tax on such sales."

To say that "preparation" does not include "the least preparation" is to fly directly in the face of the plain meaning of the word "prepare."

Webster's defines "prepare":

"1a: to make ready beforehand for some purpose: put into condition for a particular use, application, or disposition . . . b: to make ready for eating . . . ."

There can be no doubt that the clear and unambiguous meaning of "prepare" includes the operation involved in converting raw grain popcorn into the edible version of the food.

We think conversion of soft drink syrup into a beverage involves "preparation." The syrup is mixed with water and gas to form the ultimate beverage. This involves putting the syrup into condition for the ultimate use which is drinking.

4. Finally, respondent contends that a theater is not a restaurant, hotel, cafe, bar, caterer, lunch counter, wagon, or other *similar* establishment. It is necessary to expand respondent's argument somewhat. The contention is that even if a theater *is* engaged in the business of preparing food or beverages, a theater is not similar in nature to the enumerated members of the class mentioned prior to the use of the general term "other establishments."

The respondent would have the court apply the doctrine of *ejusdem generis*.[3] The rule:

" '. . . accomplishes the purpose of giving effect to both the particular and the general words, by treating the particular words as indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words.' " *National Bank of Commerce v. Estate of Ripley* (1901), 161 Mo. 126, 131, 61 S. W. 587, 588, as cited in 2 Sutherland, *Statutory Construction* (3d ed.), p. 399, sec. 4909.

Unfortunately, respondent does not indicate what the common element is in the specific types of establishments set out by sec. 77.52 (1) (a) 7, Stats. Certainly a hotel (which is primarily engaged in the business of providing lodging facilities) has very little in common with a bar or a caterer. The common element which we find is that the specifically enumerated establishments commonly sell prepared food for direct consumption. Therefore, even by applying the rule of *ejusdem generis,* a theater, which sells prepared food for direct consumption would be included in the term "other establishments."

---

[3] Meaning literally "of the same kind." The doctrine is explained in 2 Sutherland, *Statutory Construction, infra,* at page 395:

"Where general words follow specific words in an enumeration describing the legal subject, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."

None of the respondent's contentions would place theaters, which prepare popcorn and beverages, outside the application of the selective sales tax as we have interpreted sec. 77.52 (1) (a) 7, Stats.

*Appellant's Interpretation.*

If there is any single factor which has contributed to the apparent ambiguous understanding of the selective sales tax statute, it is the interpretation placed on the statute by the Department of Revenue.

The department's current position on the application of the selective sales tax is set out in Administrative Opinion No. 16A. The opinion is dated January 29, 1964. The opinion exempts from the application of the tax all prepackaged (*i.e.*, unprepared) foods even when they are sold by a restaurant, hotel, cafe, etc. In other words, the ultimate criterion the department uses to determine whether or not the tax is applicable is whether or not the *particular item* was prepared. If it was prepared, the tax applies. If it was not prepared, the tax does not apply.

We do not believe that this application of the selective sales tax is in accord with the plain and unambiguous language of the statute. As previously set out, we believe the statute plainly indicates that the *entire* gross receipts (from the sale of meals, food, food products and beverages) are subject to the tax if an establishment is one subject to the tax. Those establishments subject to the tax are the enumerated ones plus any other establishment which meets the dual test of (1) engaging in the business of preparing *any* foods or beverages, and (2) selling for direct consumption on or off the premises.

Obviously, under either the interpretation given by the department or the interpretation which we subscribe to the statute, the sale of prepared popcorn and beverages in a theater is subject to the sales tax. The interpretation

of the plain and unambiguous language in the statute, we feel, leads to a broader application of the sales tax than is now being done.

Because the respondent's argument fails here under either our interpretation or the department's interpretation, we do not believe it is necessary to make more than a passing reference to the following rules of construction.

The supreme court is not bound by an administrative agency's construction of a statute. *Johnson v. Chemical Supply Co.* (1968), 38 Wis. 2d 194, 156 N. W. 2d 455. Ordinarily, however, the interpretation placed upon a statute by the administrative agency charged with the duty of applying such statute is given great weight. *Chevrolet Division, G. M. C. v. Industrial Comm.* (1966), 31 Wis. 2d 481, 143 N. W. 2d 532; *Cook v. Industrial Comm.* (1966), 31 Wis. 2d 232, 142 N. W. 2d 827, and cases cited therein.

These general rules fail when a statute is not ambiguous.

". . . administrative interpretation is only of significance where there is an ambiguity in the statute. It cannot overcome the plain wording of a statute where there is no ambiguity." *Nelson v. Ohio Casualty Ins. Co.* (1966), 29 Wis. 2d 315, 320, 139 N. W. 2d 33.

We hold that the Tax Appeals Commission was correct in concluding that the sales of popcorn and soft drinks prepared and sold at motion picture theater refreshment stands were subject to sales taxation under sec. 77.52 (1) (a) 7, Stats.

*By the Court.*—Judgment reversed.

HALLOWS, C. J. (*dissenting*). In sec. 77.52 (1) (a) 7, Stats., it is plainly provided that food products and beverages must be sold "by . . . , and other establishments engaged in the business of preparing food or beverages and selling for direct consumption . . ." Popcorn, to me, is not food as that word is used in this section. Besides,

theaters are in the entertainment business and are not establishments like restaurants, cafes, bars, lunch counters and hotels. The placement of a comma in statutory construction does not have the importance or significance ascribed to it by the majority opinion. The doctrine of *ejusdem generis* should apply.

The sales tax statute is a limited and specialized tax and the statute is not to be given a broad interpretation. The result of the majority opinion is to take out the selectivity in the selective sales tax. If there is any ambiguity in this tax statute, it must be resolved in favor of the taxpayer, not the government. I do not think the legislature intended to tax a citizen on the purchase in the theater of the popcorn he eats while enjoying a movie. I would affirm.